UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JULIO NOVA,

        Plaintiff,

    v.

MS. C. ROCKER, Senior Counselor; MR. D.
MARTUSCELLO, Acting Commissioner;
MR. A. ANNUCCI, Former Acting
Commissioner; MR. D. VENETTOZZI,
Former Director of Special Housing Unit;
MR. A. RODRIGUEZ, Director of Special
Housing Unit; MR. J. RICH, Superintendent;
MR. T. CARROLL, Captain/Acting Deputy
Superintendent for Security; MS. M.
RIVERA, Corrections Sergeant; MR. T.
TOMPKINS, Corrections Sergeant; MR. N.
HUBLER, Corrections School Teacher;
JOHN DOE 1-5, C.O. NAIDA, and C.O.
WALLACE,[1]

        Defendants.

23-CV-6170-FPG

ORDER

---

*Pro se* Plaintiff Julio Nova, currently incarcerated at the Green Haven Correctional

Facility, filed a Complaint asserting claims against Correction Officer C. Rocker ("Rocker") and

ten John and Jane Doe Elmira Correctional Facility ("Elmira") officials. ECF No. 1.  On May 31,

2023, the Court issued an order granting Plaintiff permission to proceed *in forma pauperis* and

screening the Complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a).  ECF No. 4 (the initial

screening order).  The Court dismissed Plaintiff's state law claims and his 42 U.S.C. § 1983 claims

seeking monetary damages against New York Department of Corrections and Community

---

[1] The Clerk of Court is directed to amend the caption as set forth above to include Naida and Wallace.

Supervision ("DOCCS") and its agents in their official capacities. *Id.* at 18-19. The Court found Plaintiff had plausibly alleged certain claims and dismissed the remaining claims with leave to amend, indicating that those claims would be dismissed with prejudice pursuant to §§ 1915(e)(2)(B) and 1915A(b) unless Plaintiff filed an amended complaint. *Id.* at 21.

Plaintiff filed an Amended Complaint, ECF No. 13, which the Court accepts as timely filed. The Amended Complaint again names Rocker and adds the following Defendants: Acting Commissioner Martuscello ("Martuscello"), former Acting Commissioner Annucci ("Annucci"), former Director of Special Housing Unit Venettozzi ("Venettozzi"), Director of Special Housing Unit Rodriguez ("Rodriguez"), Superintendent Rich ("Rich"), Acting Deputy Superintendent for Security Carroll ("Carroll"), Sergeant Rivera ("Rivera"), Sergeant Tompkins ("Tompkins"), corrections school teacher Hubler ("Hubler"), John Doe[s] 1-5, Correction Officer Naida ("Naida"), and Correction Officer Wallace ("Wallace").

For the reasons discussed below, Plaintiff's retaliation claim will proceed to service upon Naida and Rivera; his excessive force claim will proceed to service upon Naida; his failure to intervene claim will proceed to service upon Rivera; and his due process claim will proceed to service upon Rocker and Hubler. Certain claims from the original Complaint are deemed abandoned, and, accordingly, will be dismissed, because Plaintiff failed to include any factual allegations in support of them in the Amended Complaint. Several claims will be dismissed without leave to amend because the Court previously apprised Plaintiff of the pleading requirements to state such claims and Plaintiff failed to plausibly allege facts setting forth those requirements. Defendants Carroll, Rich, Tompkins, Lang, Annucci, Wallace, Martuscello, Venettozzi, Rodriguez, and John Does 1-5 will be terminated from the action because either

2

Plaintiff failed to allege their personal involvement in any constitutional deprivation, or they are named in an abandoned or insufficiently pled claim.

## DISCUSSION

### I. SCREENING

Sections 1915 and 1915A "provide an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)). The court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the court determines that the action "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2).

In evaluating a complaint, the Court accepts all factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). To be sufficient, a pleading "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In that vein, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). That measure of plausibility requires "more than a sheer possibility that a defendant has acted unlawfully"—the pleaded facts must permit a "reasonable inference" of liability for the alleged misconduct. *Id.*

3

## II.    FACTUAL ALLEGATIONS

Plaintiff primarily composed his Amended Complaint with conclusory allegations. In sum, the facts in the Amended Complaint allege that (1) in July 2020, while incarcerated at Elmira, Naida retaliated against him for filing a grievance against her and (2) in August 2020, in an unrelated incident, Plaintiff was accused of fighting with an inmate named Rosa. ECF No. 13 at 11-12. Plaintiff contends Rosa is a known violent offender who suddenly and without provocation attacked him. *Id.* at 13-16. Nonetheless, Plaintiff received a misbehavior report asserting Tier III violations. *Id.* at 1, 16. Rocker convened a disciplinary hearing, found Plaintiff guilty of four of the six charges in the misbehavior report, and sentenced Plaintiff to 180 days in the Special Housing Unit ("SHU"). *Id.* at 17, 19, 97. Plaintiff successfully challenged the disciplinary decision in an Article 78 petition, obtaining an annulment of the prison's disciplinary determination and expungement of the record of his disciplinary infraction. *Id.* at 22. By the time that decision was issued, Plaintiff had served his full 180-day sentence. *Id.*

## III.   CLAIMS

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against an official under § 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation; it is not enough to assert

that the defendant is a link in the chain of command. *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004). Moreover, the theory of *respondeat superior* is not available in a § 1983 action. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). "[T]here is no special rule for supervisory liability. Instead, a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (internal quotation marks omitted).

### A. Claims Deemed Abandoned

"It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (quoting *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977)). In general, "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." *Austin v. Ford Models, Inc.*, 149 F.3d 148, 155 (2d Cir. 1998) (quotations and citations omitted), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). In *Austin*, however, the Second Circuit declined to apply the general rule to *pro se* litigants, reasoning that they "may not fully understand the superseding effect of the second pleading, even when it is allowed much less when it is disallowed." *Id.* "Ultimately," the Circuit noted, "the question of abandonment is one of intent." *Id.*

In its initial screening order, the Court dismissed several of Plaintiff's claims with leave to amend. ECF No. 4 at 8-16. For each of these claims, the Court set forth the elements of the claim and described the deficiencies in Plaintiff's pleading. In granting leave to amend, the Court cautioned Plaintiff that if he failed to file an amended pleading that conformed to the Court's instructions, the claims would be dismissed. *Id.* at 21.

Plaintiff's original Complaint asserted an access to courts claim based on alleged interference with his legal mail. *Id.* at 6. Any allegations regarding interference with his legal mail are conspicuously left out of Plaintiff's Amended Complaint. Consequently, Plaintiff's access to courts claim is deemed abandoned.

Plaintiff also asserted a failure to protect claim based on the contention that a "John Doe" commented that Plaintiff is a snitch, *id.* at 10, but the Amended Complaint contains no allegations regarding any comment that Plaintiff is a snitch. This claim is therefore deemed abandoned.

Plaintiff named in his original Complaint a Sergeant Doe, since identified as Sergeant George Lang. *Id.* at 8-9; ECF No. 5 (*Valentin* response). The Amended Complaint does not name Lang and does not contain any allegations attributable to Lang. Accordingly, any claims against Lang are deemed abandoned.

The Court also permitted Plaintiff to replead his conspiracy claim. ECF No. 4 at 15-16. As the Amended Complaint contains no specific allegations regarding a conspiracy, this claim is deemed abandoned.

Because the Court previously cautioned Plaintiff that if he failed to file an amended pleading that conformed to the Court's instructions, the claims would be dismissed, and because his omission of those claims and Lang as a defendant appear to be intentional, his abandoned claims are dismissed without leave to amend. *See Fluitt v. Baxter*, No. 22-CV-6507-FPG, 2023 WL 3275976, at *6 (W.D.N.Y. May 5, 2023) ("Although [the] [p]laintiff was granted leave to amend these [conditions of confinement and equal protection] claims, he did not replead them in the Amended Complaint. The Court deems these claims abandoned, and, consequently, they are now dismissed with prejudice.").

### B. Claims Proceeding to Service

#### 1. Retaliation

In its initial screening order, the Court found Plaintiff's retaliation claim against Naida sufficient to proceed to service. ECF No. 4 at 6.   To the extent Plaintiff intended to assert a retaliation claim against another official, the Court granted Plaintiff leave to replead the claim. *Id.* Plaintiff alleges in his Amended Complaint that the day after he submitted his grievance against Naida, Rivera authorized Naida to search Plaintiff's cell, and was present when Naida assaulted Plaintiff, but stood by, taking no action. ECF No. 13 at 12, ¶¶ 41-44. Although Plaintiff does not specifically state that Rivera knew about Plaintiff's protected conduct of filing a grievance, these allegations are sufficient to warrant further factual development and service upon Rivera.

#### 2. Excessive Force

In its initial screening order, the Court dismissed Plaintiff's excessive force claim with leave to amend because he did not allege any injury and the allegations did not establish that the force used was to cause harm, rather than in a good-faith effort to maintain or restore discipline. ECF No. 4 at 7-8.   Plaintiff now alleges that without provocation, and the day after he filed a grievance against her, Naida "punched and kicked" him several times causing Plaintiff to urinate blood "for about a week" and suffer a headache "for several days." ECF No. 13 at 13 ¶¶ 46-47. These allegations are sufficient to survive initial screening and service will be made upon Naida.

#### 3. Failure to Intervene

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Ekukpe v. Santiago*, 823 F. App'x 25, 32 (2d Cir. 2020) (summary order) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)).   A claim for an

officer's failure to intervene is alleged by "demonstrating that '(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) the officer knew that the victim's constitutional rights were being violated; and (3) the officer did not take reasonable steps to intervene.'" *Flannery v. City of Rochester*, No. 22-CV-6101, 2022 WL 16856660, at *8 (W.D.N.Y. Nov. 10, 2022) (brackets omitted) (quoting *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008)).

"Failure to intervene claims are contingent upon the disposition of the primary claims underlying the failure to intervene claim." *Usavage v. Port Auth. of N.Y. & N.J.*, 932 F. Supp. 2d 575, 599 (S.D.N.Y. 2013) (internal quotation marks omitted). Thus, that Plaintiff has plausibly alleged an excessive force claim is relevant to whether his failure to intervene claim may proceed. *See Coleman v. City of New York*, No. 07 CIV. 1051 (CM), 2010 WL 571986, at *8 (S.D.N.Y. Feb. 2, 2010) (dismissing failure to intervene claims against police officers where no underlying constitutional violation was alleged). Plaintiff alleges Rivera "was present during the entire time he was assaulted by defendant Naida," and had "ample opportunity to intervene," but "instead [Rivera] allowed CO Naida to carry-out the assault where she punched and kicked Plaintiff multiple times." ECF No. 13 at 12 ¶ 44; 13 ¶ 47. These allegations are, at this early stage, sufficient to warrant service upon Rivera.

### 4. Procedural Due Process

In its initial screening order, the Court permitted Plaintiff's procedural due process claim to proceed to service upon Rocker. ECF No. 4 at 13-14. The allegations in the Amended Complaint remain sufficient to permit his procedural due process claim to proceed to service upon Rocker.

Plaintiff newly names Hubler as a Defendant. He contends that Rocker assigned Hubler to assist Plaintiff with preparing for his disciplinary hearing, but Hubler failed to provide meaningful assistance. ECF No. 13 at 17, ¶¶ 65-67. Specifically, "Plaintiff requested that [Hubler] visit and interview incarcerated individuals [who were] in [a] position to see or hear anything in regard to the said incident." *Id.*, ¶ 65. Plaintiff chiefly complains that Hubler's failure to complete the tasks he requested meant Plaintiff was unable to call certain witnesses. *Id.* at 48, 64-66, 91-93 (disciplinary hearing transcript). The Albany Supreme Court found "[t]he administrative record and respondent's concession establish that the Hearing Officer improperly relied on information from the employee assistant as to the issue of whether certain witnesses were willing to testify," and concluded a new hearing was warranted. ECF No. 1-1 at 61. Given that Plaintiff had served "all of the sanctions in [the] matter (including 180 days in the Special Housing Unit)," the court annulled the disciplinary determination and expunged the disciplinary infraction from Plaintiff's record. *Id.*

Constitutionally sufficient due process in a prison disciplinary hearing includes, *inter alia*, the right to call witnesses and the aid of a staff member or inmate in presenting a defense. *Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974); *Eng v. Coughlin*, 858 F.2d 889, 897 (2d Cir. 1998) (assistance in presenting defense). Where an inmate is unable to investigate the charges on their own behalf, DOCCS regulations entitle the inmate to receive assistance in investigating the charge and preparing a defense. *See Elder v. McCarthy*, 967 F.3d 113, 118 (2d Cir. 2020) (citing 7 N.Y.C.R.R. 251-4.1(a)(4)). As *Elder* explains, the constitutional obligation of assistance "is violated by a failure to . . . interview an inmate's requested witnesses without assigning a valid reason." *Id.* at 126 (quoting *Fox v. Coughlin*, 893 F.2d 475, 478 (2d Cir. 1990)).

The hearing record shows that Hubler and Plaintiff had very different perspectives regarding the assistance Plaintiff alleges he requested and the assistance Hubler testified that he provided. ECF No. 13 at 48, 64-66, 91-93. For this reason, and because the Article 78 outcome lends support to Plaintiff's allegation that Hubler's failure to provide adequate assistance impacted his ability to present his defense—whether due to Hubler's failure or Rocker's, the Court finds this claim warrants further factual development and will be served upon Hubler.[2]

### C. Claims Subject to Dismissal

#### 1. Failure to Protect

Plaintiff's Amended Complaint alleges that Carroll, Rich, and Tompkins failed to protect Plaintiff "from a particularly dangerous incarcerated individual" and failed "to take action to prevent the well documented longstanding problem in Elmira C.F." *Id.* at 16 ¶ 58. Plaintiff alleges that Carroll, Rich, and Tompkins have been aware that Elmira "exposes incarcerated individuals to conditions that present a substantial risk of harm, and as a result Plaintiff was seriously injured." *Id.* ¶¶ 60, 164. He also alleges that Defendant Doe is responsible for making Rosa a porter. *Id.* at 5 ¶ 15. These conclusory allegations do not sufficiently demonstrate that Plaintiff was incarcerated under conditions posing a substantial risk of serious harm or that Carroll, Rich, Tompkins, and Doe acted with deliberate indifference to his safety. *See* ECF No. 4 at 8-9 (setting forth the elements required to plead a failure to protect claim arising from an unprovoked assault).

Plaintiff also alleges that Wallace failed to secure Rosa in his cell "in accordance [with] applicable required prison's supervision rules and [regulations]," thus failing to prevent the assault despite having "ample opportunity" to do so. ECF No. 13 at 15, ¶¶ 55-56. Plaintiff further asserts

---

[2] The Court expresses no opinion as to whether this claim can withstand a properly filed motion to dismiss or for summary judgment.

"upon information and belief," that Rosa had "previously been cited by [DOCCS] for violent behavior against other incarcerated individuals on at least [one] or two occasion[s]." *Id.* ¶ 57. Neither Plaintiff's bald assertion that Wallace should have secured Rosa in his cell in accordance with applicable rules and regulations nor his allegation that Rosa was possibly previously cited for violent behavior plausibly alleges a condition posing a substantial risk of harm to Plaintiff or Wallace's deliberate indifference.

In its initial screening order, the Court set forth the elements of a failure to protect claim, noted that "[i]n the context of an unprovoked assault, a substantial risk of serious harm can be alleged by showing that all prisoners in plaintiff's circumstance faced a risk of attack and the defendants knew or should have known about it," and provided examples of allegations that other courts had found sufficient to state such a claim. ECF No. 4 at 8-9. Plaintiff's unremarkable observation that Elmira, as a maximum-security prison, houses many offenders prone to violence, *see* ECF No. 13 at 16, 37, and his assertion that Rosa may have been previously cited for violent acts, do not sufficiently plead that he was at a substantial risk of serious harm in the circumstance he faced—returning from "chow" and, happenstance, encountering inmate Rosa. *Id.* at 14-15. Thus, he fails to allege a substantial risk of serious harm and to make the necessary connection between the Defendants' knowledge of that risk of harm and the attack Plaintiff alleges he suffered. *See* ECF No. 4 at 9. Accordingly, this claim is dismissed without further leave to amend. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257 (2d Cir. 2018) ("When a plaintiff was aware 'of the deficiencies in his complaint when he first amended,' he 'clearly has no right to a second amendment. . . .'" (quoting *Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978)); *accord Williams v. Baxter*, No. 22-CV-6117-EAW, 2023 WL 5584345, at *3 (W.D.N.Y. Aug. 29, 2023) (applying *Nat'l Credit Union Admin. Bd.* and *Denny* holdings to litigant proceeding

*pro se*); *Daniels v. Carter*, No. 21CIV8985ATSLC, 2022 WL 17979915, at *10 (S.D.N.Y. Nov. 22, 2022), *report and recommendation adopted*, No. 21CIV8985ATSLC, 2022 WL 17978908 (S.D.N.Y. Dec. 28, 2022) (applying *Denny* to *pro se* litigant).

### 2. Equal Protection

Plaintiff's original Complaint contended that Defendants deprived him equal protection "when subjecting him to ridicule and disparaging ethnic behavior." ECF No. 1 at 25. Plaintiff alleged he overheard a derogatory exchange between two sergeants when he was a patient at Elmira's hospital. *Id.* at 24-25; *see also* ECF No. 4 at 4 (reciting the exchange). In its initial screening order, the Court dismissed the claim with leave to amend because the allegations regarding race or ethnicity were conclusory and limited to verbal abuse. ECF No. 4 at 11 (citing *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986)).

Plaintiff's Amended Complaint changes course, now contending that the events stemming from the altercation with Rosa would not have occurred but for systemic racism within DOCCS. *See* ECF No. 13 at 1, 5-42. Specifically, he asserts that but for his race, he would not have received a misbehavior report, faced Tier III disciplinary charges, been adjudicated guilty on four of those six charges, or sentenced to 180 days in SHU. *Id.* at 27-28 ¶¶ 117, 119.

This claim sets forth a new theory of liability, is based on different events, and names different defendants. It therefore goes beyond the scope of the initial screening order's leave to amend. Even overlooking that, this claim is composed of conclusory allegations and the Amended Complaint does not suggest the existence of facts that would plausibly allege that Plaintiff was denied equal protection on the basis of his race.

"'[T]o state a race-based claim under the Equal Protection Clause, a plaintiff must allege that a government actor intentionally discriminated against him on the basis of his race,' which

may be asserted in various ways." *Miller v. Terrillion*, 391 F. Supp. 3d 217, 224 (E.D.N.Y. 2019)

(quoting *Brown v. City of Oneonta, New York*, 221 F.3d 329, 337 (2d Cir. 2000), *overruled in part*

*on other grounds by Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002)).

> A plaintiff may point to an express racial classification, identify a facially neutral law or policy that has been applied in an intentionally discriminatory manner or allege that a facially neutral statute or policy has an adverse effect and that it was motivated by discriminatory animus. Discriminatory intent requires proof that a discriminatory purpose has been a motivating factor in the challenged action, *i.e.*, that those who carried out the challenged action selected or reaffirmed a particular course of action at least in part *because of*, not merely in spite of, its adverse effects upon an identifiable group.

*Id.* at 224–25 (citation and internal quotation marks omitted) (emphasis added).

Plaintiff points to three sources of data to support his claim. First, a survey conducted in

1989, "assessing formal and informal punitive practices in the U.S. prison [system]" and

concluding that "solitary confinement, loss of privileges, physical beatings and other forms of

deprivation and harassment were common disciplinary practice[s] that were rendered routinely,

capriciously, and brutally in maximum-security U.S. prisons." ECF No. 13 at 5 (internal quotation

marks omitted). He alleges the study further found that Black and Latino prisoners were targeted

for especially harsh treatment. *Id.*

Second, a 2016 New York Times article "that delved into 59,354 disciplinary cases from

2015." *Id.* at 6. It found, *inter alia*, that at some New York prisons "the rate at which Black and

Hispanic prisoners were punished was twice that of white prisoners [and that Black and Hispanic

prisoners] also ended up in solitary confinement more often, and were held there for longer periods

of time." *Id.*

Third, a 2022 New York Inspector General study, which found "that despite policy changes

within DOCCS intended to address the known problem of disparities in the administration of

misbehavior reports for offenses committed while in 'custody,' Black and Hispanic incarcerated

people remain more like[ly] than their white counterparts to face [additional] punishment behind bars." *Id.* at 7.  These allegations are indeed troubling, but Plaintiff makes no connection between the information contained in the survey, news article, and study and what he alleges happened to him.

Further, the Amended Complaint is rife with inconsistencies in both his factual allegations and the data he presents.  For example, Plaintiff contends that "[b]ase[d] on the [I]nspector General['s] analysis, upon information and belief, defendant Rocker['s] hearing disposition dated Oct. 27, 2020, and her guilty finding[s] against Black and Hispanic [inmates] in the past, must have been rendered based on Plaintiff's race." *Id.* at 27-28, ¶¶ 117, 119.  But the Amended Complaint includes no indication that Rocker sentences Black and Hispanic prisoners more harshly than prisoners of other races or that she adjudicates Black and Hispanic prisoners guilty more often than prisoners of other races.  Conversely, Plaintiff contends that Rocker has a one-hundred percent conviction rate because her motto is "the guards are never wrong." *See id.* at 21, ¶ 92.

And although Plaintiff alleges the IG report shows that Hispanic incarcerated individuals are "more than 12 percent more likely to be issued a misbehavior [report] than a white incarcerated individual," *id.* at 7, there are no allegations permitting the inference that Plaintiff received a misbehavior report because he is Hispanic.

In addition, the data Plaintiff presents in support of his claims is not specific to Elmira, where the alleged constitutional violations occurred.  It also does not provide information from which the Court could infer a pattern of race discrimination within Tier III disciplinary hearing processes.  For example, Plaintiff alleges "[t]he DOCCS disciplinary process almost always secures a conviction against Black and Hispanic [incarcerated] individuals. From 2007 to 2011,

14

DOCCS conducted more than 105,500 Tier III disciplinary hearings with a conviction rate of approximately 95%." *Id.* at 10, ¶ 30.

This data appears to refer to all Tier III hearings within DOCCS and is not specific to Elmira, although Plaintiff does allege that racial bias is generally more pronounced the further the prison is from Manhattan. *Id.* at 6-7. More importantly, the data does not make clear whether ninety-five percent of *Black and Hispanic inmates* facing Tier III hearings are convicted or ninety-five percent of *all inmates* facing Tier III hearings are convicted. In other words, this data does not show differences in the disciplinary outcomes of Black and Hispanic inmates as compared to inmates of other races. Thus, it does not help the Court in determining whether Plaintiff can plausibly allege race discrimination due to bias inherent in Elmira's disciplinary system or Tier III disciplinary hearings generally.

Finally, his factual allegations regarding the individual Defendants do not evince any racial animus toward him. For example, Plaintiff contends his SHU sentence "was rendered against [him] based on his race," *id.* at 31, ¶ 131, but there are no facts in the Amended Complaint or attachment thereto that warrant an inference that Plaintiff's race was a factor in the disciplinary proceedings against him.

The Court notes again that although Plaintiff's original Complaint alleged that two sergeants subjected him to "ridicule and disparaging ethnic behavior," ECF No. 1 at 25, his Amended Complaint contains no such allegations. Moreover, the alleged behavior in the original Complaint points to sergeants working in Elmira's hospital, while the allegations in the Amended Complaint name those involved in Plaintiff's disciplinary proceeding.

Though vast, Plaintiff's allegations of race discrimination are conclusory. In sum, Plaintiff asks the Court to infer that racial bias in the disciplinary processes of some prisons, *id.* at 6, paired

with a racially disproportionate pattern of misbehavior reports in all DOCCS prisons, *id.* at 7, equates to intentional discrimination against him. But his Amended Complaint does not permit such inference.

Because Plaintiff's allegations are insufficient to establish that race was a motivating factor in any of the constitutional violations alleged in the Amended Complaint, his equal protection claim is dismissed. Because this claim is outside the scope of the permitted amendment and the Amended Complaint does not suggest the existence of facts that would plausibly allege this theory of liability, the Court denies further leave to amend. *See Fisher v. Bureau of Alcohol, Tobacco & Firearms*, No. 22-CV-6440-CJS, 2023 WL 2082552, at *6 (W.D.N.Y. Feb. 17, 2023) (denying opportunity to replead where the plaintiff "did not comply with Court's instructions to clarify his claims, but, rather, submitted an essentially different lawsuit" in part asserted under "an entirely new theory of recovery"); *Palm Beach Strategic Income, LP v. Salzman*, 457 F. App'x 40, 43 (2d Cir. 2012) (summary order) ("District courts in this Circuit have routinely dismissed claims in amended complaints where the court granted leave to amend for a limited purpose and the plaintiff filed an amended complaint exceeding the scope of the permission granted.").

### 3. Procedural Due Process: False Misbehavior Report

In this newly asserted claim, Plaintiff alleges that Tompkins and Wallace "issu[ed] a false misbehavior report against [him]." ECF No. 13 at 36, ¶ 155. There are two paths to alleging a constitutional claim based on a false misbehavior report. One way is to show that the misbehavior report "was issued in retaliation for exercising a constitutionally protected right." *Willey v. Kirkpatrick*, 801 F.3d 51, 63 (2d Cir. 2015). The other is to show that the plaintiff "was disciplined without adequate due process as a result of [an allegedly false] report." *Id.* The facts in the Amended Complaint show neither.

Regarding Tompkins, Plaintiff alleges: "Defendants Tompkins and Wallace acted with deliberate indifference by issuing a false misbehavior report against Plaintiff." *Id.* at 36, ¶ 155. The Amended Complaint contains no factual allegations suggesting that Tompkins authored a misbehavior report. The only reference connecting Tompkins to a misbehavior report is the statement in Wallace's report that "Inmate Rosa was observed by myself with a laceration to the back of his neck which Sgt. Tompkins deemed consistent with a cutting type weapon." *Id.* at 15.

Regarding Wallace, Plaintiff contends that Wallace's written misbehavior report differed from the testimony he gave at Plaintiff's disciplinary hearing. ECF No. 13 at 14-15. Plaintiff alleges that Wallace's written report states that he observed Plaintiff make a "slashing type motion to the back of Inmate Rosa." *Id.* at 15. Wallace testified:

> I was observing the chow return of 4 gallery inmates coming upstairs. Inmate Nova came up the stairs, turned the corner to go to 4 gallery, and inmate Rosa exited 4 gallery at which time he turned, used his left hand, made a slashing motion to the side of inmate Nova's face . . . . Inmate Rosa initiated the contact.

*Id.* at 77.

Plaintiff does not contend that Rocker's allegedly unconstitutional acts during the disciplinary hearing arose from Wallace's misbehavior report or his testimony. Instead, Plaintiff contends Rocker denied him due process because she was biased, did not direct his assistant to interview the witnesses he requested, and denied him the opportunity to present relevant testimony and evidence. *Id.* at 17-21.

The allegations regarding Tompkins and Wallace do not establish that a misbehavior report was issued in retaliation for Plaintiff's exercise of a constitutionally protected right or that Plaintiff was disciplined without adequate due process as a result of a false report. The Court notes that Plaintiff's original Complaint asserted that Wallace's misbehavior report and testimony differed, but there were no facts suggesting that Plaintiff intended to assert a claim based on a false

misbehavior report. Because no facts in the Complaint or Amended Complaint plausibly allege a constitutional violation based on a false misbehavior report, this claim is dismissed without further leave to amend. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (leave to amend pleadings may be denied when any amendment would be futile).

### 4. Procedural Due Process: Disciplinary Appeals

Plaintiff alleges that Annucci, Venettozzi, Rodriguez, and Rich could have prevented, modified, or corrected Plaintiff's SHU sentence but did not. *Id.* at 11 ¶ 36; 21-22; 32-33 ¶ 141. Plaintiff contends that as part of the disciplinary appeal process, Rich could have reduced or vacated the "term of SHU confinement" by virtue of his role as Superintendent, but Rich instead "authorized the continued unlawful confinement," *id.* at 21, ¶ 94, and Venettozzi and Rodriguez "'affirmed and confirmed' Plaintiff's full sentence," *id.* at 21-22 ¶ 95. He further contends that "Defendants Martuscello, [A]nnucci, Rodriguez, Venettozzi, and Rich were personally involved because they were policy makers with respect to [DOCCS] appeal decisions and they are responsible for ensuring that [DOCCS] personnel obey the constitution and the laws of the United States." *Id.* at 22, ¶ 96. And, further, that "Defendants Annucci, Venettozzi, and Rich had ample opportunity to prevent Plaintiff's 180 days in SHU sentence, yet failed to do so when they ignored his appeal failing to protect him and to intervene and preventing Plaintiff from serving an unconstitutional SHU sentence." *Id.* at 33, ¶ 141.

Although plausibility might be found upon allegations that an "official proactively participated in reviewing the administrative appeals as opposed merely to rubber-stamping the result," *Hamilton v. Smith*, No. 06-CV-805, 2009 WL 3199531, *22 (N.D.N.Y. Jan. 13, 2009), courts are "not required to credit conclusory allegations or legal conclusions couched as factual allegations," *Iqbal*, 556 U.S. at 678 (citation and alterations omitted). Plaintiff's Amended

18

Complaint does not contain facts from which the Court could infer that Martuscello, Annucci, Venettozzi, Rodriguez, or Rich proactively participated in reviewing his administrative appeals or that any of them possessed the requisite information at the appropriate time to prevent, modify, or correct Plaintiff's SHU sentence. His conclusory allegations contend only that the Defendants could have done so by virtue of their supervisory position in either the chain of command or the administrative review system for inmate disciplinary proceedings. However, the Court previously apprised Plaintiff that the theory of *respondeat superior* is not available to impose personal liability in a § 1983 action. Therefore, this claim is dismissed without further leave to amend.

### 5. Conditions of Confinement

It is well-established that the Eighth Amendment "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). To demonstrate that conditions of confinement constitute cruel and unusual punishment in violation of the Eighth Amendment, a plaintiff must satisfy both an objective and subjective element. *See Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996). The objective element is met if the plaintiff alleges conditions that objectively posed an unreasonable risk of serious damage to his health so as to deny him "the minimal civilized measure of life's necessities." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). The subjective element requires a plaintiff to allege that the defendant acted with deliberate indifference with regard to the risks posed by the condition. *Id.* Deliberate indifference "entails something more than mere negligence." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) . A prison official acts with deliberate indifference when he or she "knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837.

### a. Mental Health Confinement

Plaintiff alleges that on August 3, 2020, after he asked to see a "mental health staff provider," he was escorted to the facility's mental health hospital and placed in an observation cell, where he spent the night naked; without sheets or a blanket, he was "very cold." ECF No. 13 at 13, ¶ 45. These allegations are contained in a section of the Amended Complaint asserting retaliation claims. However, there is no apparent connection between this event and the acts that Plaintiff alleges were retaliatory, to wit: searching his cell, damaging his typewriter, and assaulting him. *Id.* at 12-13. Moreover, Plaintiff does not allege the personal involvement of any Defendant in this claim. Because the Court previously stressed the importance of alleging the personal involvement of each and every defendant, this claim is dismissed without further leave to amend.

### b. SHU confinement

Plaintiff contends that the conditions in SHU "were pretty bad: cold, loud, bugs, mice[,] and extremely dirty," and that his "neighbor" in SHU "spent hours after hour compulsively and inexplicably screaming Plaintiff's name." ECF No. 13 at 33-34 ¶ 145. Plaintiff alleges that Annucci, Venettozzi, Rodriguez, Rich, and Carroll

> were personally responsible for [authorizing] and maintaining the policies and customs that resulted in the SHU conditions described[, and] that Annucci was personally involved in authorizing and continuing the policies and customs that govern the general conditions and deprivations in all SHU. As Directors of SHU, Venettozzi and Rodriguez were and are personally [aware] of and responsible reviewing and authorizing the SHU conditions maintained by the Superintendent of Elmira. In particular, Directors of SHU Venettozzi and Rodriguez, were and are aware that the policies and customs in regard SHU placed Plaintiff's physical safety at risk. The Superintendent is personally responsible for the management of the day-to-day conditions of SHU confinement at his [facility], and authorized and continued policies that resulted in the SHU conditions.

*Id.* at 22, ¶ 97; *see also* 35-36, ¶ 154.

Plaintiff's allegations do not suggest that Annucci, Venettozzi, Rodriguez, Rich, or Carroll knew about the conditions Plaintiff was experiencing in SHU and disregarded them. *Farmer*, 511 U.S. at 837. To the extent that Plaintiff relies on the theory of *respondeat superior*, it is well settled that, to state a § 1983 claim, a plaintiff must allege that the defendant violated the constitution "by his [or her] own conduct, not by reason of [the defendant's] supervision of others who committed the violation." *Tangreti*, 983 F.3d at 619. Therefore, a conclusory allegation that a defendant was negligent in supervising his or her subordinates does not allege that the defendant violated the plaintiff's constitutional right. As stated above, the doctrine of *respondeat superior* cannot be used to establish liability in a § 1983 action. *See Hernandez*, 341 F.3d at 144. This claim is accordingly dismissed without leave to amend.

## ORDER

IT HEREBY IS ORDERED that Plaintiff's retaliation claim may proceed to service upon Naida and Rivera; his excessive force claim may proceed to service upon Naida; his failure to intervene claim may proceed to service upon Rivera; and his due process claim may proceed to service upon Rocker and Hubler; all other claims are dismissed; and the Clerk of Court shall terminate from this action Defendants Carroll, Rich, Tompkins, Lang, Annucci, Wallace, Martuscello, Venettozzi, Rodriguez, and John Doe 1-5; and it is further

ORDERED the Clerk of Court is directed to cause the United States Marshals Service to serve copies of the summons, Amended Complaint, and this order upon Rocker, Naida, Rivera, and Hubler without Plaintiff's payment therefore, unpaid fees to be recoverable if this action terminates by monetary award in Plaintiff's favor; and it is further

ORDERED that pursuant to 42 U.S.C. § 1997(e)(g)(2) Defendants are directed to answer the Amended Complaint upon service; and it is further

21

ORDERED that the Clerk of Court is directed to email a copy of this order to Ted O'Brien,

Assistant Attorney General in Charge, Rochester Regional Office, at Ted.O'Brien@ag.ny.gov; and

it is further

ORDERED that Plaintiff shall notify the Court in writing if his address changes.  The Court

may dismiss the action if Plaintiff fails to do so.

IT IS SO ORDERED.

Dated: September 25, 2023
      Rochester, New York

                                       HON. FRANK P. GERACI, JR.
                                       United States District Judge
                                       Western District of New York