UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JULIO NOVA,

    Plaintiff,

v.

MS. C. ROCKER, Senior Counselor; MS. M.
RIVERA, Corrections Sergeant; MR. N.
HUBLER, Corrections School Teacher;
C.O. NAIDA,

    Defendants.

23-CV-6170-FPG

ORDER

---

*Pro se* Plaintiff Julio Nova, currently incarcerated at the Upstate Correctional Facility, filed a Complaint asserting claims against Correction Officer C. Rocker ("Rocker") and ten John and Jane Doe Elmira Correctional Facility ("Elmira") officials. ECF No. 1. On May 31, 2023, the Court issued an order granting Plaintiff permission to proceed *in forma pauperis* and screening the Complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a). ECF No. 4 (the initial screening order). The Court dismissed Plaintiff's state law claims and his 42 U.S.C. § 1983 claims seeking monetary damages against New York Department of Corrections and Community Supervision ("DOCCS") and its agents in their official capacities. *Id.* at 18-19. The Court found Plaintiff had plausibly alleged certain claims and dismissed the remaining claims with leave to amend, indicating that those claims would be dismissed with prejudice pursuant to §§ 1915(e)(2)(B) and 1915A(b) unless Plaintiff filed an amended complaint as directed in the Court's order. *Id.* at 21.

Plaintiff filed an amended complaint, ECF No. 13, which the Court screened under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a), ECF No. 15 (the second screening order). In that screening order the Court permitted Plaintiff's retaliation claim to proceed to service upon Naida and Rivera,

his excessive force claim to proceed to service upon Naida, his failure to intervene claim to proceed to service upon Rivera, and his due process claim to proceed to service upon Rocker and Hubler. The Court dismissed as abandoned Plaintiff's access to courts, failure to protect, and conspiracy claims, and all claims against Sergeant George Lang. Plaintiff's claims for failure to protect, equal protection, procedural due process based on a false misbehavior report and disciplinary appeals, and conditions of confinement based on mental health and SHU confinement were dismissed without leave to amend because the Court previously apprised Plaintiff of the pleading requirements to state such claims and Plaintiff failed to plausibly allege facts setting forth those requirements. Resultingly, Defendants Carroll, Rich, Tompkins, Lang, Annucci, Wallace, Martuscello, Venettozzi, Rodriguez, and John Does 1-5 were terminated from the action.

The Court entered its second screening order on September 26, 2023. On October 18, 2023, Plaintiff requested an extension of time to file a motion for reconsideration of that order, ECF No. 16, which the Court granted the next day, ECF No. 17. After an additional extension of time, ECF Nos. 20, 21, Plaintiff filed the instant motion for reconsideration of the Court's second screening order, ECF No. 23. For the reasons set forth below, the motion is GRANTED in part and DENIED in part.

## RECONSIDERATION

Plaintiff's motion for reconsideration is broad. He asks the Court to reinstate "all dismissed causes of action," ECF No. 23 at 3, and to review facts in his original and amended complaint that he contends the Court failed to liberally construe to allege certain claims, *id.* at 5, 14, 15. More specifically, Plaintiff contends that the Court did not address his false imprisonment, intentional discrimination, and state created danger claims. *Id.* at 5. He seeks reconsideration of the Court's rulings regarding his claims for Annucci, Venettozzi, Rodriguez, Rich, and Martuscello's failure

to properly hire, train, supervise, and discipline DOCCS employees "in regard to disciplinary appeals, procedural due process in regard to false misbehavior report, and equal protection of the law." *Id.* at 5-6. Plaintiff also specifically requests reconsideration of the Court's dismissal of the following claims: (1) failure to protect against Carroll, Rich, and Tompkins; (2) "equal protection under systemic racism"; (3) "procedural due process: false misbehavior report" against Tompkins and Wallace; (4) "procedural due process: disciplinary appeal" against Annucci, Venettozzi, Rodriguez, and Rich; (5) "condition of confinement: unusual punishment"; and (6) SHU confinement against Annucci, Venettozzi, Rodriguez, and Rich, and Carroll. *Id.* at 7-8.

I. **Legal Standard**

A district judge may modify pre-trial rulings and interlocutory orders any time before final judgment. *See In re United States*, 733 F.2d 10, 13 (2d Cir. 1984). Reconsideration of a prior decision is generally justified if there is: (1) an intervening change in controlling law; (2) newly available evidence; or (3) the need to correct a clear error of law or to prevent manifest injustice. *See, e.g., Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992). A litigant cannot use a motion for reconsideration to reargue matters already disposed of by prior rulings or to advance additional arguments that could have been raised previously. *See Duane v. Spaulding & Rogers Mfg. Inc.*, No. 92-CV-305, 1994 WL 494651, *1 (N.D.N.Y. Aug. 10, 1994). Thus, a "motion for reconsideration is not a device intended to give an unhappy litigant one additional chance to sway the judge." *Nossek v. Bd. of Ed. of Duanesburg Cent. Sch. Dist.*, No. 94-CV-219, 1994 WL 688298, *1 (N.D.N.Y. Nov. 10, 1994) (internal quotations marks omitted).

II. **Discussion**

Plaintiff presents arguments for reconsideration of the following claims: conditions of confinement in SHU, procedural due process with respect to a false misbehavior report, false

3

imprisonment, and equal protection. The Court addresses Plaintiff's arguments in the order he presents them in his motion.

### A. Conditions of Confinement in SHU

In analyzing the SHU conditions of confinement claim asserted against Annucci, Venettozzi, Rodriguez, Rich, and Carroll, the Court quoted the following passage from Plaintiff's amended complaint, alleging that these Defendants:

> were personally responsible for [authorizing] and maintaining the policies and customs that resulted in the SHU conditions described[, and] that Annucci was personally involved in authorizing and continuing the policies and customs that govern the general conditions and deprivations in all SHU. As Directors of SHU, Venettozzi and Rodriguez were and are personally [aware] of and responsible reviewing and authorizing the SHU conditions maintained by the Superintendent of Elmira. In particular, Directors of SHU Venettozzi and Rodriguez, were and are aware that the policies and customs in regard SHU placed Plaintiff's physical safety at risk. The Superintendent is personally responsible for the management of the day-to-day conditions of SHU confinement at his [facility], and authorized and continued policies that resulted in the SHU conditions.

ECF No. 15 at 20. The Court also noted that regarding the conditions in SHU, Plaintiff alleged that they "were pretty bad: cold, loud, bugs, mice[,] and extremely dirty," and that his "neighbor" in SHU "spent hours after hour compulsively and inexplicably screaming Plaintiff's name." *Id.* The Court concluded that these allegations did not suggest that Annucci, Venettozzi, Rodriguez, Rich, or Carroll knew about the conditions Plaintiff was experiencing in SHU and disregarded them. *Id.* at 21.

Plaintiff asserts that in reaching this conclusion, the Court did not accept his "pleaded factual matters" as true. ECF No. 23 at 13. He further asserts that the Court "clearly misinterpreted the law with respect to Plaintiff's pleadings in regard to 'theory of respondeat superior' because he did in fact allege how each individual defendant violated the constitution by his or her own

4

conduct." *Id.* Plaintiff points to paragraphs 94-98 of his amended complaint in support of his argument. *Id.*

The referenced paragraphs first allege that Rich knew about the conditions of confinement because he "reviewed Plaintiff's disciplinary disposition and the 180 days SHU sentence that followed his 'Superintendent's Hearing.'" ECF No. 13 at 21, ¶ 94. "Like all final supervisory authority under New York law to reduce or vacate Plaintiff['s] term of SHU confinement, Superintendent Rich authorized the continued unlawful confinement." *Id.* Plaintiff next alleges that Directors Venettozzi and Rodriguez knew about the conditions of confinement because they "reviewed information related to Plaintiff's incident, the rationales for the SHU sentence, and length of the punis[h]ment imposed." *Id.* ¶ 95. "Defendants Venettozzi and Rodriguez 'affirmed and confirmed' Plaintiff's full sentence on January 7, 2021, ending the administrative process available to prisoners for challenging SHU sanction." *Id.* at 21-22, ¶ 95. He then alleges "Martuscello, Annucci, Rodriguez, Venettozzi, and Rich were personally involved because they were policy makers with respect to [DOCCS'] appeal decisions and they are responsible for ensuring that [DOCCS] personnel obey the constitution and the laws of the United States." *Id.* at 22, ¶ 96. Plaintiff lastly alleges that a

> a re[a]sonable official would know the SHU sentence imposed on the Plaintiff is not sup[p]orted by any legitimate interest, including those identified in the misbehavior report, and that the grossly disproportionate len[gt]h of SHU sentence would simply inflict unnecessary pain on Plaintiff and place him at an unjustified risk harm, in violation of his clearly established constitutional rights. Despite this, however, the sentence imposed by the hearing officer, and authorized and enforced by the SHU Directors and the Elmira Superintendent. The policies and customs of DOCCS caused Plaintiff's unconstitutional acts and omission.

*Id.* at 23, ¶ 98.

These allegations do not show that any of these Defendants knew that the conditions in SHU "were pretty bad: cold, loud, bugs, mice[,] and extremely dirty," and that Plaintiff's

5

"neighbor" in SHU "spent hours after hour compulsively and inexplicably screaming Plaintiff's name." *Id.* at 33-34, ¶ 145. Rather, these allegations allege only that these Defendants knew Plaintiff been sentenced to 180 days in SHU and did not reverse or modify that sentence. But the mere fact that a supervisory official affirmed the result of a disciplinary hearing will not suffice to establish that official's personal involvement in an alleged constitutional violation. *See Aramas v. Polizzi*, No. 18-CV-4106 (KMK), 2022 WL 1597696, at *8 (S.D.N.Y. May 19, 2022) (stating that "[i]n general, the mere fact that a supervisory official affirmed the result of a disciplinary hearing will not suffice to establish that official's personal involvement in an alleged constitutional violation"); *Canales v. Sheahan*, No. 12-CV-693(LJV)(HBS), 2017 WL 1164462, at *5 (W.D.N.Y. Mar. 28, 2017) (dismissing claim for lack of personal involvement where conduct "suggests no more than a 'rubberstamping'" affirmance of disciplinary determination), *report and recommendation adopted*, No. 12-CV-693(LJV)(HBS), 2018 WL 774335 (W.D.N.Y. Feb. 7, 2018). For these reasons, the Court denies Plaintiff's motion with respect to his Eighth Amendment conditions of confinement claim.

### B. Procedural Due Process: False Misbehavior Report

Plaintiff contends that because his procedural due process claim is proceeding to service upon hearing officer Rocker, his due process claim based on the filing of a false misbehavior report should go forward as well. ECF No. 23 at 14.

In its second screening order, the Court observed that a plaintiff may allege a constitutional claim based on a false misbehavior report by showing that the plaintiff was disciplined without adequate due process as a result of an allegedly false misbehavior report. Dkt. 15 at 16. The Court concluded that the facts alleged did not show that Plaintiff was disciplined without adequate due process *as a result of* the allegedly false misbehavior report, rather the sources of the due process

6

violation were Rocker's improper reliance on information from the employee assistant, and her potential bias, as it was not clear to this Court that Rocker's decision was supported by "some reliable evidence" of Plaintiff's guilt. *See* ECF No. 4 at 13-14; 15 at 8-10. This conclusion was based on the Court's reading of *Willey v. Kirkpatrick*, 801 F.3d 51, 63 (2d Cir. 2015), to require a plaintiff to connect the false misbehavior report to the due process violation that occurred in the hearing. *Cf. Cissé v. Mitchell*, No. 22-CV-6071-FPG, 2022 U.S. Dist. LEXIS 170094, at *17 (W.D.N.Y. Sep. 20, 2022) (permitting due process claim to proceed where the defendant "embellished" the misbehavior report and gave false testimony at the disciplinary hearing and the hearing officer "heavily relied upon the embellished misbehavior report and [its author's] prejudice[d] testimony when he rendered his decision").

A more generous reading of *Willey's* requirement that a due process violation must be "as a result of" the false misbehavior report is that any due process violation that occurs at the subsequent hearing provides a basis to assert a due process violation against the misbehavior report's author. In other words, so long as the disciplinary hearing provided all the procedural due process to which the inmate is entitled, there can be no constitutional violation based on the false misbehavior report, but if the disciplinary hearing adjudicating the false misbehavior report lacked due process, then the inmate may pursue a constitutional claim against the author of that report. Applying this interpretation of *Willey*, the Court grants Plaintiff's motion with respect to his due process claim based on the filing of a false misbehavior report. This claim may be served upon Wallace, the author of the false misbehavior report.

### C. False Imprisonment

Plaintiff contends that the Court should have liberally construed the allegations in paragraphs 122-127 of the amended complaint to allege a false imprisonment claim. ECF No. 23 at 14.

A claim of false imprisonment may be asserted under § 1983 "because it violates the Fourth Amendment." *Cook v. Sheldon*, 41 F.3d 73, 77 (2d Cir. 1994). Federal courts look to state law when considering federal civil rights claims for false imprisonment. *See Guan v. City of New York*, 37 F.4th 797, 804 (2d Cir. 2022); *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991) (under New York law, false arrest is synonymous with false imprisonment). Under New York law, a false imprisonment claim is established with facts showing that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *McGowan v. United States*, 825 F.3d 118, 126 (2d Cir. 2016) (quoting *Broughton v. State*, 37 N.Y.2d 451, 335 N.E.2d 310, 314, 373 N.Y.S.2d 87 (N.Y. 1975)). "To succeed on the fourth element, a plaintiff complaining of false imprisonment within solitary confinement must have 'sufficiently pleaded that he had been subjected to punitive segregation for no legitimate reason and without the rudimentary protections of due process.'" *Willey*, 801 F.3d at 71 (quoting *Gittens v. State of N.Y.*, 132 Misc.2d 399, 403, 504 N.Y.S.2d 969, 972 (N.Y. Ct. Cl. 1986)); *accord Wilson v. Wolcott*, No. 20-CV-1416-LJV, 2022 WL 3229848, at *6 (W.D.N.Y. Aug. 10, 2022).

The allegations in Plaintiff's amended complaint adequately allege that Wallace (author of the false misbehavior report) and Rocker (the hearing officer) intended to confine him, that Plaintiff was conscious of his confinement, that he did not consent to it, and that it was not otherwise privileged because it was done for an illegitimate reason and without due process.

8

Because the Court erred in not construing Plaintiff's allegations to assert a false imprisonment claim, it grants Plaintiff's motion with respect to his false imprisonment claim as to Rocker and Wallace.

As to Plaintiff's false imprisonment claim against "the superintendent that authorized and enforced Plaintiff's confinement in the extreme isolation cell at his prison," ECF No. 13 at 30, ¶ 126, this bald allegation is insufficient to allege this superintendent's personal involvement in Plaintiff's SHU confinement. *See Aramas*, 2022 WL 1597696, at *8; *Canales*, 2017 WL 1164462, at *5, *report and recommendation adopted*, 2018 WL 774335. Accordingly, the Court denies Plaintiff's motion with respect to his false imprisonment claim as to the unnamed superintendent.

### D. Equal Protection

Plaintiff next argues that the Court should not have dismissed his equal protection claim prior to discovery. ECF No. 23 at 15. He contends that the Court's "statement that Plaintiff's amended complaint is rife with inconsistencies in both his factual allegations and the data he had presented speak[s] volumes." *Id.* And if the Court permitted him to proceed to discovery, Plaintiff would prove the Court wrong. *Id.* In particular, Plaintiff "stand[s] tall to [his] statement in regard that defendant Rocker has a one-hundred percent conviction rate in conducting disciplinary hearings." *Id.* These arguments do not provide a basis for reconsidering the Court's dismissal of Plaintiff's equal protection claims. With respect to Plaintiff's contention that Rocker's one-hundred percent conviction rate is proof of racial animus, as the Court noted in its second screening order, Rocker's one hundred percent conviction rate does not support Plaintiff's allegation that Rocker discriminates against Black and Hispanic prisoners. *See* ECF No. 15 at 14. The amended complaint made no indication that Rocker sentences Black and Hispanic prisoners more harshly than prisoners of other races or that she adjudicates Black and Hispanic prisoners guilty more often

9

than prisoners of other races. *Id.* Stated differently, Plaintiff does not, for example, allege that of the cases she adjudicates, Rocker convicts one hundred percent of Black and Hispanic prisoners and convicts only fifty percent of white prisoners. Accordingly, the Court denies the motion with respect to Plaintiff's equal protection claim.

### E. Other Claims

Plaintiff makes no arguments with respect to the other claims he contends the Court should reconsider. Having carefully considered Plaintiff's motion and its prior rulings, the Court finds no cause to reinstate any other claims. *See Virgin Atl. Airways*, 956 F.2d at 1255.

### ORDER

IT HEREBY IS ORDERED that Plaintiff's motion for reconsideration, ECF No. 23, is granted as to his due process claim against Wallace and his false imprisonment claim against Wallace and Rocker. The motion is in all other respects denied. Accordingly, the Clerk of Court will cause the United States Marshal to serve copies of the Summons, Amended Complaint, and this Order upon Defendants Wallace and Rocker without Plaintiff's payment, unpaid fees to be recoverable if this action terminates by monetary award in Plaintiff's favor.

IT IS SO ORDERED.

Dated: December 27, 2023
Rochester, New York

HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York