UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JULIO NOVA,

Plaintiff,

Case # 23-CV-6170-FPG

v.

DECISION & ORDER

COLLEEN ROCKER, *et al.*,

Defendants.

## INTRODUCTION

*Pro se* Plaintiff Julio Nova ("Plaintiff") brings this civil rights action against Defendants Hearing Officer Colleen Rocker ("Rocker"), Sergeant Maria Rivera ("Rivera"), Teacher Raymond Hoobler/Hubler ("Hubler")[1], Corrections Officer Megan Naida ("Naida"), and Corrections Officer Jeffrey Wallace ("Wallace") pursuant to 42 U.S.C. § 1983. ECF No. 13. Presently before the Court is Defendants' unopposed Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56. ECF No. 77. For the reasons that follow, Defendants' Motion for Summary Judgment, ECF No. 77, is GRANTED.

## LEGAL STANDARD

Summary judgment is appropriate when the record shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the

[1] Various filings refer to Raymond Hoobler with his last name spelled "Hoobler" and "Hubler." For purposes of this motion, this Court will refer to him as "Hubler" because that is how Defendants wrote his name in their memorandum of law in support of their motion for summary judgment, ECF No. 77-8, and how his name was written in Plaintiff's disciplinary hearing transcript, ECF No. 77-7 at 70. The Clerk of Court is directed to update Raymond Hoobler's name to "Raymond Hubler" on the docket.

non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *See Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). However, the non-moving party "may not rely on conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quotations omitted).

"Where, as here, a summary judgment motion is unopposed, uncontroverted facts in the moving party's statement pursuant to Local Rule 56.1 are deemed admitted." *Siler v. Walden*, No. 20-CV-05794, 2023 WL 3871999, at *4 (S.D.N.Y. June 7, 2023) (quotations omitted), *reconsideration denied*, 2023 WL 5152701 (July 21, 2023); *see also Fate v. Petranker*, No. 19-CV-5519, 2022 WL 2672317, at *1 (S.D.N.Y. July 8, 2022) ("Statements made by [d]efendant that are supported by admissible evidence and not refuted by [p]laintiff are deemed admitted."). Nevertheless, "[e]ven when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004). "Before summary judgment may be entered, the district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed." *Jackson v. Fed. Exp.*, 766 F.3d 189, 194 (2d Cir. 2014); *Oliver v. Gilmore*, No. 13-CV-490A, 2014 WL 6387352, at *4 (W.D.N.Y. Nov. 14, 2014) ("This Court cannot automatically grant summary judgment merely upon an opponent's failure to respond to a movant's statement of material facts, but if the record supports the unopposed statements of fact, summary judgment is appropriate.").

Moreover, *pro se* litigants "must be given extra latitude, particularly on a summary judgment motion." *Barrett v. Moody*, No. 19-CV-190, 2023 WL 2898310, at *6 n.4 (W.D.N.Y. Feb. 23, 2023), *report and recommendation adopted*, No. 19-CV-190, 2023 WL 2898659 (W.D.N.Y. Apr. 10, 2023) (internal quotations omitted); *Coley-Allen v. Strong Health*, 828 F. Supp. 2d 582, 584-85 (W.D.N.Y. 2011) ("While the motion is unopposed, the Court has nonetheless examined the record in detail, remaining mindful of the standards relevant to deciding a motion for summary judgment, and granting plaintiff every favorable inference as a *pro se* litigant, and as a non-movant."). "[A]n unopposed summary judgment motion in a *pro se* action may be granted where (1) the *pro se* litigant has received adequate notice that failure to file any opposition may result in the entry of summary judgment without trial,[2] and (2) the court is satisfied that 'the facts as to which there is no genuine dispute show that the moving party is entitled to summary judgment as a matter of law.'" *Taylor v. Consol. Rail Corp.*, 166 F. Supp. 2d 652, 654 (N.D.N.Y. 2001) (quoting *Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir. 1996)); *Lue v. JPMorgan Chase & Co.*, 768 F. App'x 7, 10 (2d Cir. 2019) (summary order) ("Where a motion for summary judgment is unopposed, summary judgment is proper only if the court is satisfied that the moving party has met its burden with sufficient support in the record evidence.").

[2] Here, the Court informed Plaintiff of the deadline to file a response and that failure to do so would result in the motion being deemed unopposed and his complaint potentially being dismissed without trial. ECF No. 80. This order was mailed to Plaintiff. *Id*. The Court is thus satisfied that Plaintiff has received adequate notice of the consequences of non-opposition to the motion for summary judgment. *Jackson v. Jackson*, No. 16-CV-08516, 2021 WL 981849, at *5 (S.D.N.Y. Mar. 16, 2021) (finding adequate notice where *pro se* plaintiff "was warned that failure to file an opposition would result in the [c]ourt concluding that the motion was unopposed"); *Taylor v. Consol. Rail Corp.*, 166 F. Supp. 2d 652, 654 (N.D.N.Y. 2001) (finding sufficient notice where the court "thoroughly explained both the procedures plaintiff should follow if he wished to proceed *pro se* and oppose the summary judgment motion, and the consequences that would result if plaintiff failed to timely submit opposition papers").

## BACKGROUND

### I. The Material Facts are Undisputed

In this case, Defendants served their Motion for Summary Judgment on Plaintiff, which included a Rule 56 Statement of Undisputed Facts, ECF No. 77-1 at 1, and a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment," ECF No. 77-2 at 1, to alert Plaintiff to the procedural requirements of summary judgment motions and the consequences of not responding. ECF No. 77. In addition, the Court's Scheduling Order advised Plaintiff of the consequences of not responding to Defendants' Motion. ECF No. 80.

Despite this, Plaintiff failed to file an opposing statement contesting Defendants' Statement of Undisputed Facts or otherwise respond to the motion. Having reviewed Defendants' Statement and found it satisfactory, *see Jackson*, 766 F.3d at 194, the Court adopts Defendants' Rule 56 Statement as the undisputed facts of the case. *See Xerox Corp. v. Southwest Direct, Inc.*, No. 15-CV-6245, 2016 WL 3766425, at *2 (W.D.N.Y. July 8, 2016) (citing *Gubitosi v. Kapica*, 154 F.3d 30, 31 n.1 (2d Cir. 1998)).

### II. Undisputed Facts

The events that gave rise to this action occurred on two separate occasions. The first incident occurred between August 2, 2020 and August 3, 2020. ECF No. 13 at 12. Because Defendants do not include all of the facts related to this incident in their Statement of Undisputed Facts, the Court recites the facts from Plaintiff's amended complaint, *id.*, for context. According to Plaintiff's amended complaint, on August 2, 2020, while incarcerated at Elmira Correctional Facility ("Elmira"), Plaintiff wrote a grievance complaining that Correctional Officer Naida had denied him access to the "kiosk." *Id.* at 12. Plaintiff then alleges that the next day, on August 3, 2020, in retaliation for writing the grievance concerning Naida, Naida searched his cell,

intentionally damaged his typewriter by slamming it to the floor, *id.*, and "without [] provocation[,] applied unnecessary force," punched, and kicked Plaintiff multiple times, *id.* at 13. Plaintiff claims that due to Naida's assault, he urinated blood for about a week and suffered from chronic headaches for several days. *Id.* Plaintiff further alleges that Sergeant Rivera, who was present, had ample opportunity to intervene and prevent the assault by Naida, but instead failed to intervene. *Id.*

The following facts related to the first incident are undisputed. On August 3, 2020, the date that Plaintiff claims Naida assaulted Plaintiff in retaliation for the grievance and Rivera failed to intervene, between the hours of 7 AM and 3 PM, Naida was not working in the C-Block because she was at the facility firing range receiving firearms training. ECF No. 77-1 ¶ 3. On August 13, 2020, Plaintiff filed a grievance in which he alleged that he was assaulted by Naida in the C-Block on August 3, 2020. *Id.* ¶¶ 5,7. Elmira has no record of a grievance filed by Plaintiff on August 2, 2020 against Naida or anyone else. *Id.* ¶1.

The second incident giving rise to this action occurred on September 18, 2020. *Id.* ¶ 9. The following facts related to that incident are undisputed. On September 18, 2020, Plaintiff was involved in an altercation with another incarcerated individual, Vincent Rosa ("Rosa"). *Id.* Following the altercation, Plaintiff was accused of (1) fighting, (2) creating a disturbance, (3) violent conduct, (4) disobeying a direct order, (5) assault on inmate, and (6) possessing a weapon. *Id.* ¶ 13. On September 24, 2020, Plaintiff's disciplinary hearing was held before Hearing Officer Rocker to address Plaintiff's disciplinary charges. *Id.* ¶¶ 14, 15. Hubler, a teacher at Elmira, was assigned to be Plaintiff's tier assistant for the disciplinary hearing. *Id.* ¶ 14.

During the disciplinary hearing, Plaintiff told Rocker that he had asked Hubler to interview everyone in two of the galleries to see if they had seen anything, heard anything, and whether they

wanted to testify at Plaintiff's hearing, and to report back to Plaintiff. *Id.* ¶ 15. Plaintiff told Rocker that Hubler had failed to report back. *Id.* The disciplinary hearing was adjourned and continued on October 20, 2020. *Id.* ¶¶ 16, 17. Corrections Officer Wallace testified that he observed Rosa making slashing motions at Plaintiff, at which point Plaintiff and Rosa began fighting with closed-fist punches. *Id.* ¶ 24. According to Wallace, only after "several orders" were given to cease fighting did Plaintiff and Rosa break up the fight. *Id.*

Plaintiff requested Rosa testify, *id.* ¶ 20, but Rosa refused to sign the refusal form which would have documented his refusal to testify; instead, a corrections captain at Rosa's facility signed the form to indicate Rosa's refusal to sign. *Id.* ¶ 21. During the disciplinary hearing, Rocker showed Plaintiff the refusal document, but mistakenly said Rosa had signed the form indicating his refusal. *Id.* ¶ 22. Rocker then corrected her mistake on the record, but Plaintiff accused Rocker of having "bias," claimed "these whole proceedings are corrupt," blamed Rocker of "trying to pull a trick" on him, and stated that "[she is] [] very biased. [She is] just trying to trick me." *Id.* at ¶ 22. Plaintiff, in his amended complaint, accused Rocker of having bias and discriminatory animus towards Plaintiff because he is Hispanic. ECF No. 13 at 20.

Plaintiff accused Rocker of "lying" and having her mind made up because she had referred to Rosa as the person Plaintiff had fought with. ECF No. 77-1 ¶ 26. Rocker again explained that she was referring to what the misbehavior report was alleging. *Id.* Plaintiff also requested that Rocker allow in Rosa's medical records and that Rosa's treating nurse be allowed to testify at the disciplinary hearing. *Id.* ¶ 29. Rocker denied Plaintiff access to Rosa's medical records and did not allow Rosa's treating nurse to testify. *Id.* ¶ 30.

Rocker then called Hubler to testify in response to Plaintiff's concerns that Hubler had not determined which incarcerated individuals had seen the incident and were willing to testify, as

Plaintiff had requested that he do. *Id.* ¶ 31. Hubler testified that he provided Plaintiff with a copy of the misbehavior report from the incident and testified that he had personally interviewed all the incarcerated individuals on I-2 and I-4 gallery, and that they had all either refused to testify or stated that they had no knowledge of the incident. *Id.* He explained a few had agreed to sign refusals, and the rest refused to sign the refusals. *Id.*

While initially Plaintiff wanted Sergeant Tompkins to testify, after Tompkins did not answer the phone, Plaintiff conceded that Tompkins had not seen the incident. *Id.* ¶ 33; ECF No. 77-7 at 115. During the disciplinary hearing, Rocker later told Plaintiff, "[Y]ou indicated that you're waiving Sgt. Tompkins" to which Plaintiff responded, "Yeah." ECF No. 77-7 at 116.

The hearing concluded on October 28, 2020. ECF No. 77-1 ¶ 35. Rocker found Plaintiff not guilty on the charges of assault on an inmate and possessing a weapon, based on the testimony that Rosa had initiated the fight and because no weapons were recovered. *Id.* Rocker found Plaintiff guilty of the other four charges, based on testimony from both Wallace and Nero that Plaintiff had fought with Rosa, and Wallace's testimony that he had to give repeated orders before they separated. *Id.* ¶ 36. Rocker sentenced him to, *inter alia*, 180 days of Special Housing Unit time. *Id.*

Plaintiff appealed Rocker's guilty determination, *id.* ¶ 40, and filed an Article 78 Petition in New York State court, *id.* ¶ 42, which was granted because Rocker had improperly relied on Hubler's representation of whether certain witnesses were willing to testify, *id.* Rocker's determination was accordingly reversed and expunged. *Id.*

On March 23, 2023, Plaintiff filed a *pro se* complaint alleging claims pursuant to 42 U.S.C. § 1983. ECF No. 1. On August 30, 2023, Plaintiff filed an amended complaint. ECF No. 13. After screening the amended complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a), this Court

found that Plaintiff had plausibly alleged the following claims: (1) retaliation as to Naida and Rivera, ECF No. 15 at 7, and failure to intervene as to Rivera on August 3, 2020, *id.* at 8; *see* ECF No. 13 at 12; (2) excessive force as to Naida on August 3, 2020, ECF No. 15 at 7; *see* ECF No. 13 at 13; and (3) procedural due process violations as to Rocker for failing to call witnesses and having bias, and Hubler for ineffective assistance during the disciplinary hearing that concluded on October 27, 2020, ECF No. 15 at 8-10; ECF No. 13 at 2. On January 30, 2026, Defendants filed a Motion for Summary Judgment. ECF No. 77. Plaintiff never filed an opposition to the present motion.

**DISCUSSION**

Defendants now move for summary judgment on all of Plaintiff's claims pursuant to Rule 56. *Id.* The Court discusses each claim below.

**I. Retaliation and Failure to Intervene Claims**

Plaintiff's first claim alleges that Naida and Rivera retaliated against Plaintiff, ECF No. 13 at 12, and that Rivera failed to intervene while Naida was assaulting Plaintiff, *id.* at 13. Defendants argue that they are entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies as to these claims, as required by the Prison Litigation Reform Act (the "PLRA"). ECF No. 77-8 at 8-11.

The PLRA requires a "prisoner confined in any jail, prison, or other correctional facility" to exhaust all available administrative remedies before filing suit in federal court. 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 578 U.S. 632, 639 (2016) (holding that exhaustion is "mandatory"). "The PLRA exhaustion requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009)

(quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). In general, a prisoner is "required to exhaust his administrative remedies prior to filing an action in federal court." *Perez v. Ponte*, 236 F. Supp. 3d 590, 604 (E.D.N.Y. 2017), *report and recommendation adopted*, 16-CV-645, 2017 WL 1050109 (E.D.N.Y. Mar. 15, 2017). A prisoner must utilize the available grievance procedures, "regardless of whether the relief sought is offered through those procedures." *Espinal*, 558 F.3d at 124. Thus, to properly exhaust administrative remedies, a prisoner must use "all steps that the [government] agency holds out." *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). He also must comply with the facility grievance "system's critical procedural rules," *Woodford*, 548 U.S. at 95, including time limits, *Hill v. Curcione*, 657 F.3d 116, 124 (2d Cir. 2011).

"The PLRA's exhaustion requirement is designed to 'afford [ ] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004) (quoting *Porter*, 534 U.S. at 525). Therefore, to properly exhaust administrative remedies, "inmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures." *Id.*; *see also Brownell v. Krom,* 446 F.3d 305, 310 (2d Cir. 2006) (holding that while it is "appropriate to afford *pro se* inmates a liberal grievance pleading standard, the grievance may not be so vague as to preclude prison officials from taking appropriate measures to resolve the complaint internally"). A grievance should contain a "concise, specific description of the problem and the action requested and indicate what actions the grievant has taken to resolve the complaint." 7 N.Y.C.R.R.§ 701.5(a)(2). The Second Circuit has held that this requirement "is analogous to the requirements of notice pleading." *Solano v. Aubin*, No. 20-CV-1378, 2023 WL 5200397, at *5 (N.D.N.Y. Aug. 14, 2023) (citing *Brownell,* 446 F.3d at 310). However, the grievant need not "lay

out the facts, articulate legal theories, or demand particular relief[;] [a]ll the grievance need do is object intelligibly to some asserted shortcoming." *Id.* (quoting *Johnson*, 380 F.3d at 697).

There is no question that the PLRA requirements apply in this case because Plaintiff was incarcerated when he filed the complaint, and Plaintiff alleged that while incarcerated, his civil rights were violated by prison staff. *See* ECF No. 13 at ¶¶ 2, 4; *Espinal*, 558 F.3d at 124. "Failure to exhaust administrative remedies is an affirmative defense, and when raised as a basis for summary judgment, the defendant bears the initial burden of establishing, by pointing to legally sufficient sources such as statutes, regulations, or grievance procedures, that a grievance process exists and applies to the underlying dispute." *Deleon v. Ayers*, No. 16-CV-6848L, 2023 WL 171889, at *2 (W.D.N.Y. Jan. 12, 2023) (internal citation and quotations omitted).

Here, Defendants have met this burden by attaching the declaration of Misty Odell, Elmira's Inmate Grievance Program Supervisor, to their summary judgment motion, in which Odell cites to the grievance process as set forth in 7 N.Y.C.R.R. § 701. *See* ECF No. 77-4. In her declaration, Odell explains that as Elmira's Inmate Grievance Program Supervisor, she oversees the grievance records through the DOCCS Incarcerated Grievance Program ("IGP"). *Id.* at 1.

Odell explains that Elmira's grievance process operates as described in 7 N.Y.C.R.R. § 701. *Id.* at 2. Under 7 N.Y.C.R.R. § 701, there is a three-step process to resolve inmate grievances. Specifically, Odell writes, the process requires that an inmate "(1) file a complaint with the IGRC [Inmate Grievance Review Committee] . . . ; (2) . . . appeal it to the Superintendent of the facility within (7) calendar days . . .; and (3) . . . appeal the decision to CORC [Central Office Review Committee] . . . ." ECF No. 77-4 at ¶ 9; *see Hernandez v. Coffey*, No. 99 Civ. 11615, 2003 WL 22241431, at *3 (S.D.N.Y. Sept. 29, 2003) (describing the three-step administrative inmate grievance program).

Defendants maintain that Plaintiff did not exhaust his administrative remedies as to his retaliation claims against Naida and Rivera and his failure to intervene claim against Rivera, and thus summary judgment is warranted. ECF No. 77-8 at 9-10. Specifically, Defendants argue that because Plaintiff failed to file grievances relating to these claims, he failed to exhaust his remedies, as required under the PLRA. *Id.* at 8, 10. The Court agrees. Here, Defendants have attached the only grievance that the Inmate Grievance Supervisor Odell found that Plaintiff filed in 2020. ECF No. 77-6 at 14; *see* ECF No. 77-4 at 3. In his grievance, the extent of Plaintiff's factual allegations are that, "On August 3, 2020[,] . . . at approximately at [sic] 10:30 a.m.," "[Plaintiff] was first assaulted by Officer NAIDA . . . in C-block," "the second assault was at the MHU building" and "[i]nvolved . . . Sgt. M. Rivera and others," and Plaintiff "did not consent to being punched and kicked in the face and private area of [sic] body." ECF No. 77-6 at 14. Plaintiff fails to cite to any facts that lead the reader to believe he was grieving retaliation or failure to intervene. *Id.*; *See* 7 N.Y.C.R.R.§ 701.5(a)(2) ("[T]he grievance should contain a concise, specific description of the problem . . . ."). The PLRA requires inmates to properly exhaust their administrative remedies in order to allow corrections officials the opportunity to address complaints internally before Plaintiff initiates a federal case. *Johnson*, 380 F.3d at 697. Because Plaintiff did not exhaust his administrative remedies by first filing a grievance to alert the corrections officials of his complaints of retaliation and failure to intervene, the Court concludes that Plaintiff failed to exhaust his administrative remedies, as required under the PLRA. As such, summary judgment is granted and these claims are dismissed with prejudice.

## II. Procedural Due Process Claims

Plaintiff's second claim alleges that Hearing Officer Rocker violated Plaintiff's due process rights because Rocker (1) did not call as witnesses the officers who responded to the incident and

the nurse who gave Rosa medical treatment, ECF No. 13 at 17-18; and (2) was biased towards Plaintiff, *id.* at 20. Plaintiff also brings a claim against Hubler for violating his due process rights because Hubler failed to provide adequate assistance to Plaintiff at his disciplinary hearing. *Id.* at 17. "To present a due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Collins v. Ferguson*, No. 10-CV-6350, 2015 WL 1044359, at *3 (W.D.N.Y. Mar. 10, 2015) (quoting *Giano v. Selsky,* 238 F.3d 223, 225 (2d Cir. 2001)).

Defendants argue that they are entitled to summary judgment because Plaintiff's procedural due process claims against Rocker and Hubler fail. ECF No. 77-8 at 12. The Court discusses each in turn.

**A. Failing to Call Additional Witnesses as to Rocker**

**i. Officers**

In response to Plaintiff's first claim that his due process was violated because Rocker did not call the officers who responded to the incident as witnesses, Rocker argues that she is entitled to summary judgment because due process is not violated where a hearing officer does not call witnesses whose testimony would be irrelevant. *Id.* at 13. While due process does include the right to call and present witnesses in one's defense at a disciplinary hearing, this Court agrees that due process does not require a hearing officer to call witnesses whose testimony is not relevant. *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 377 (N.D.N.Y. 2010) ("A [disciplinary] hearing officer does not violate due process by excluding irrelevant or unnecessary testimony." (quoting *Kalwasinski v. Morse*, 201 F.3d 103, 109 (2d Cir. 1999)); *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 (2d Cir. 1991) (explaining that in a disciplinary hearing due process context, "[t]he Supreme Court []

has suggested that a prisoner's request for a witness can be denied on the basis of irrelevance or lack of necessity." (citing *Ponte v. Real,* 471 U.S. 491, 495 (1985)).

Here, it is undisputed that "[n]o staff other than Wallace was [sic] observed the incident," ECF No. 77-1 ¶ 12, and that "Hearing Officer Rocker called CO Wallace, the only officer to witness the incident, as a witness," *id.* ¶ 19.[3] In this case, an officer who had not observed the incident would not have had relevant testimony at the disciplinary hearing. Thus, because other officers aside from Wallace would not have been able to offer relevant testimony, as they had not observed the incident, this Court concludes there was no due process violation on the basis that Rocker failed to call other officers besides Wallace as witnesses.

**ii. Nurse**

In response to Plaintiff's allegation that his due process rights were violated when Rocker decided not to call the nurse who treated Rosa at Plaintiff's disciplinary hearing, Rocker argues that summary judgment should be granted in her favor because Plaintiff failed to raise this as an issue in his disciplinary appeal. ECF No. 77-8 at 12. As a result of his failure to raise this issue in his disciplinary appeal, Rocker argues that Plaintiff cannot now raise the issue in the district court because he failed to administratively exhaust it, as required by the PLRA. *Id.* at 8, 13. Some courts within the Second Circuit have found that a Plaintiff has adequately exhausted their administrative remedies when they file a disciplinary appeal while other courts have required a grievance be filed. *Farid v. Ellen*, No. 01-CIV-8292 (PKC), 2003 WL 23018805, at *2 (S.D.N.Y. Dec. 23, 2003), *aff'd*, 593 F.3d 233 (2d Cir. 2010) (collecting cases). In this case, it is undisputed that Plaintiff did not file a grievance related to the disciplinary hearing. ECF No. 77-1 ¶¶ 50-51. However,

[3] While initially Plaintiff wanted Tompkins to testify, after Tompkins did not answer the phone, Plaintiff conceded, "[Sgt. Tompkins] didn't see the incident." ECF No. 77-7 at 115. Rocker later told Plaintiff, "[Y]ou indicated that you're waiving Sgt. Tompkins" to which Plaintiff responded, "Yeah." *Id.* at 116.

Defendants do not argue that Plaintiff was required to file a grievance in addition to his disciplinary appeal and instead concede that a disciplinary appeal could satisfy the PLRA's exhaustion requirement. ECF No. 77-8 at 12-13. Nevertheless, Rocker argues that in this case, Plaintiff did not administratively exhaust his claim related to not calling the nurse at the disciplinary hearing because he failed to reference that issue in his administrative appeal of the hearing officer's determination. *Id.* at 12. The Court agrees Plaintiff did not administratively exhaust his claim.

As explained earlier, failure to exhaust an administrative remedy is an affirmative defense, and the defendant bears the initial burden of establishing that an administrative remedy exists and applies. *Deleon*, 2023 WL 171889, at *2. Here, Defendants met their burden of showing that an administrative remedy exists by showing that Plaintiff had used the process to file a disciplinary hearing appeal. ECF No. 77-7 at 12. Because Defendants have met their burden, the Court turns to whether the appeal properly exhausted the issue of not calling the nurse as a witness. As explained above, to properly exhaust administrative remedies, "inmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures." *Johnson*, 380 F.3d at 697. Here, while Plaintiff submitted a disciplinary hearing appeal, the appeal did not reference that Rocker failed to call the nurse who treated Rosa. *See* ECF No. 77-7 at 12-18. Since Plaintiff did not include in his disciplinary hearing appeal that Rocker had not called the nurse as a witness, he did not provide prison officials with enough information to take appropriate steps to rectify the conduct, and therefore, he did not fully exhaust his administrative remedies. *Johnson*, 380 F.3d at 697. Because Plaintiff failed to exhaust his administrative remedies as required under the PLRA, summary judgment is granted on Rocker's behalf on the issue of Rocker not calling the nurse who treated Rosa. Plaintiff's claim is dismissed with prejudice.

**B. Bias as to Rocker**

In response to Plaintiff's claim that Rocker was biased during Plaintiff's disciplinary hearing because of his Hispanic race, ECF No. 13 at 20, Rocker asserts that the Court should grant her summary judgment because her decision was supported by "some evidence."[4] *Id.* The Court agrees with Rocker.

Due process requires that a hearing officer's decision is not "arbitrary." *Tafari*, 714 F. Supp. 2d at 377 (citing *Wolff v. McDonnell*, 418 U.S. 539, 571 (1974)). Impartiality of the disciplinary hearing officer is a procedural safeguard to which an inmate is entitled. *Allen v. Cuomo,* 100 F.3d 253, 258 (2d Cir.1996) ("An inmate subject to a disciplinary hearing is entitled to an impartial hearing officer."). However, "the degree of impartiality required of prison hearing officers does not rise to the level required of judges generally." *Black v. Selsky,* 15 F. Supp. 2d 311, 317 (W.D.N.Y.1998) (citing *Francis v. Coughlin,* 891 F.2d 43, 46 (2d Cir. 1989)). The Supreme Court requires that during a disciplinary procedure, a prison hearing officer shall not be insufficiently impartial as to present a "hazard of arbitrary decisionmaking." *Id.* "[I]t is axiomatic that a prison disciplinary hearing in which the result is arbitrarily and adversely predetermined" violates the right of due process. *Francis,* 891 F.3d at 46.

The Supreme Court in *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill* held that the hearing disposition arrived at must be supported by "some evidence" in the record, meaning that the record must contain any evidence that could support the conclusion reached by the hearing officer. 472 U.S. 445, 455-56 (1985). This "some evidence" standard is "extremely tolerant" and is a relatively light evidentiary burden; however, "only 'reliable'

[4] Defendants also argue that Plaintiff failed to show that he had a liberty interest. ECF No. 77-8 at 17. Because the Court finds that Rocker's decision was supported by "some evidence," the Court declines to address Defendants' argument that Plaintiff failed to show he had a liberty interest.

evidence can constitute 'some evidence.'" *Sira v. Morton,* 380 F.3d 57, 76-77 (2d Cir. 2004). Where final adjudication is supported by "some evidence," there is no procedural due process violation. *Tafari*, 714 F. Supp. 2d at 377.

Here, Plaintiff's concerns regarding Rocker's biases came about during Plaintiff's disciplinary hearing as Rocker explained that she had a copy of a refusal form that had been signed by Rosa in which he indicated that he did not want to testify at Plaintiff's disciplinary hearing. ECF No. 77-1 ¶ 22; ECF No. 77-7 at 90. After Rocker corrected her mistake, Plaintiff then accused Rocker of "trying to pull a trick" on him and told her, "you are very[] biased." ECF No. 77-1 ¶ 22.

Following the disciplinary hearing, Rocker found Plaintiff not guilty of the assault on inmate and weapon charges and guilty to the violent conduct, creating a disturbance, fighting, and refusing a direct order. ECF No. 77-1 at ¶¶ 35, 36. In coming to her conclusions, Rocker relied on Wallace's misbehavior report (a report which detailed Plaintiff's injuries), statements made by Nova indicating that he did not initiate the fight and was just defending himself, and the testimony of inmate Nero, who testified that he witnessed the incident and that Rosa was the aggressor. ECF No. 77-7 at 119. Additionally, Rocker relied on Wallace's testimony, in which he described witnessing Rosa initiating the fight and making slashing motions at Plaintiff. *Id.* Further, he testified that both Plaintiff and Rosa exchanged closed fist punches and that only after giving several direct orders did Plaintiff comply. *Id.*

Thus, this Court concludes that despite Rocker's mistake, which she acknowledged to Plaintiff multiple times, *see id.* at 91-92, she based the result of the disciplinary hearing on "some evidence," as required by law. *See Superintendent, Massachusetts Correctional Institution, Walpole*, 472 U.S. at 454. As such, Rocker met the light evidentiary burden of the "some evidence" standard to support her findings at Plaintiff's disciplinary hearing disposition, thus, did not violate

Plaintiff's due process rights. *See Sira,* 380 F.3d at 77. Therefore, the Court grants summary judgment as to Rocker on this issue.

**C. Failure to Provide Adequate Assistance as to Hubler**

In response to Plaintiff's claim that Hubler failed to provide adequate assistance, Hubler argues that neither ineffective assistance nor Hubler's name or position were mentioned in Plaintiff's disciplinary appeal, and thus, Plaintiff failed to exhaust this claim under the PLRA. ECF No. 77-8 at 16. As discussed earlier, some Courts within the Second Circuit have found that a Plaintiff has adequately exhausted their administrative remedies when they file a disciplinary appeal while others have required a grievance be filed. *Farid*, 2003 WL 23018805, at *2, *aff'd*, 593 F.3d 233 (collecting cases). Here, again, it is undisputed that Plaintiff did not file a grievance related to the disciplinary hearing. ECF No. 77-1 ¶¶ 50-51. However, Hubler does not argue that Plaintiff was required to file a grievance in addition to his disciplinary appeal and instead concede that a disciplinary appeal could satisfy the PLRA's exhaustion requirement. ECF No. 77-8 at 16. Nevertheless, Hubler argues that in this case, Plaintiff has failed to administratively exhaust his claim related to Hubler because he failed to reference that issue in his disciplinary administrative appeal. *Id.* The Court agrees.

As explained earlier, failure to exhaust an administrative remedy is an affirmative defense, and the defense bears the initial burden of establishing that an administrative remedy exists and applies. *Deleon*, 2023 WL 171889, at *2. Here, Defendants met their burden of showing that an administrative remedy exists by showing that Plaintiff had used the process to file a disciplinary hearing appeal. ECF No. 77-7 at 12. Because Defendants have met their burden, the Court turns to whether the appeal properly exhausted the issue of Hubler's ineffective assistance. As explained above, to properly exhaust administrative remedies, "inmates must provide enough information

about the conduct of which they complain to allow prison officials to take appropriate responsive measures." *Johnson*, 80 F.3d at 697. In this case, while Plaintiff submitted a disciplinary appeal, the appeal did not reference Hubler's ineffective assistance. *See* ECF No. 77-7 at 12-18. By not including this issue in his disciplinary hearing appeal, Plaintiff never put the prison on notice of Hubler's ineffective assistance, and likewise, did not fully exhaust his appeal, as required by the PLRA. 42 U.S.C. § 1997e(a). Because Plaintiff did not exhaust his administrative remedies, summary judgment is granted on Hubler's behalf on the issue of Hubler providing ineffective assistance. Plaintiff's claim as to Hubler is dismissed with prejudice.[5]

**III. Excessive Force Claim**

Plaintiff's third claim is that Naida used excessive force on Plaintiff when she assaulted him at 10:30 am on August 3, 2020. ECF No. 13 ¶ 46. Naida argues that summary judgment is warranted because she was not present in the C-Block that morning, as she was at the officer's training range that morning and afternoon. ECF No. 77-8 at 20. "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (citation and internal quotations omitted). "Personal involvement may be established by a showing of direct participation, namely 'personal participation by one who has knowledge of the facts that rendered the conduct illegal,' or indirect participation 'such as ordering or helping others to do the unlawful acts.'" *Columna v. City of New York*, No. 19-CV-3801, 2022 WL 767103, at *4 (S.D.N.Y. Mar. 14, 2022) (quoting *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001)).

[5] Because the Court concludes that Plaintiff failed to exhaust his due process claim against Hubler, the Court need not address Hubler's additional arguments, that Plaintiff's due process claim fails on its merits, *see* ECF No. 77-8 at 16, and failed to show a liberty interest, *id.* at 17.

Here, Naida submits a sworn affidavit explaining that she was at a training for the entire morning and early afternoon on August 3, 2020. ECF No. 77-3 at 1. She further notes that she was not in the C-Block around 10:30 AM. *Id.* Naida also attached a copy of her training records which are filed with the New York State Department of Correctional Services, and which indicate that she participated in a training on August 3, 2020. *Id.* at 5-7. Because the record demonstrates that Naida was not present when Plaintiff alleges he was the victim of excessive force, she could not have personally participated in the alleged excessive force, and the Court concludes that Plaintiff's claim fails as a matter of law. *See Columna*, 2022 WL 767103, at *4 (granting summary judgment for the officers, where the officers lacked the requisite personal involvement in the purported constitutional violation under Section 1983). Thus, Naida is entitled to summary judgment on Plaintiff's claim of excessive force.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment (ECF No. 77) is GRANTED. Plaintiff's amended complaint is dismissed with prejudice. Plaintiff's Motion for Reconsideration of his Motion for Appointment of Counsel (ECF No. 92) is DENIED AS MOOT. The Clerk of Court is directed to update Raymond Hoobler's name to "Raymond Hubler" on the docket and is further directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: September 23, 2026
Rochester, New York

HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York